EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Doble Seis Sport TV, Inc. y Milton Hernández Isern<br>Recurridos<br><br>v.<br><br>Departamento de Hacienda, Estado Libre Asociado de Puerto Rico<br>Peticionario<br><br>-------------------------------<br><br>Doble Seis Sport TV, Inc. y Milton Hernández Isern<br>Recurridos<br><br>v.<br><br>Departamento de Hacienda, Estado Libre Asociado de Puerto Rico<br>Peticionario | Certiorari<br><br>2014 TSPR 52<br><br>190 DPR ____ |

Número del Caso: CC-2012-620
                 CC-2012-756


Fecha: 4 de abril de 2014


## CC-2012-620


Tribunal de Apelaciones, Región Judicial de Bayamón

Oficina del Procurador General:

      Lcdo. Luis Román Negrón
      Procurador General

      Lcda. Valerie Díaz Aponte
      Procuradora General Auxiliar

Abogado de la Recurrida:

      Lcdo. Carlos Mondríguez Torres

## CC-2012-756

Tribunal de Apelaciones, Región Judicial de Bayamón


Oficina del Procurador General:

>      Lcdo. Luis Román Negrón
>      Procurador General

>      Lcda. Lizette Mejías Avilés
>      Procuradora General Auxiliar

Abogado de la Recurrida:

>      Lcdo. Carlos Mondríguez Torres


Materia: Procedimiento Apelativo – Métodos de notificación del recurso de Certiorari ante el Tribunal de Apelaciones.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Doble Seis Sport TV, Inc. y Milton Hernández Isern Recurridos<br><br>v.<br><br>Departamento de Hacienda, Estado Libre Asociado de Puerto Rico Peticionario<br><br>Doble Seis Sport TV, Inc. y Milton Hernández Isern Recurridos<br><br>v.<br><br>Departamento de Hacienda, Estado Libre Asociado de Puerto Rico Peticionario | CC-2012-0620 cons. con CC-2012-0756 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado señor Rivera García

En San Juan, Puerto Rico, a 4 de abril de 2014.

Estos recursos nos brindan la oportunidad de expresarnos sobre si el dueño de un bien que presuntamente se confiscó ilegalmente puede presentar una acción de daños y perjuicios contra el Estado dentro de la acción de impugnación de confiscación. En ese contexto, el Departamento de Hacienda del Gobierno de Puerto Rico (parte peticionaria o el Estado) nos solicita que revisemos dos sentencias del Tribunal de Apelaciones en las que ese foro determinó que procedía tal acción en

contra del Estado. Luego de analizar con rigor el estado de Derecho aplicable, revocamos ambas determinaciones y resolvemos que dentro de una acción de impugnación de confiscación no se puede presentar una acción de daños y perjuicios contra el Estado. De esta manera, hacemos valer el mandato legislativo contenido en la Ley Uniforme de Confiscaciones, infra.

La presente opinión atiende dos recursos consolidados por este Tribunal que presentan controversias similares de derecho: el CC-2012-0620 y el CC-2012-0756.[1] A continuación dilucidamos los antecedentes fácticos que dan lugar a la presente controversia.

**I**

**A. CC-2012-0620:**

La parte recurrente, Doble Seis Sport TV, Inc. (Doble Seis o los recurridos), es una corporación debidamente registrada en el Departamento de Estado de Puerto Rico que se dedica a la operación de máquinas electrónicas de video juegos.[2] Surge de los autos que el Departamento de Hacienda expidió a favor de Doble Seis unas licencias para la operación de esas máquinas.[3]

La controversia de este caso se origina cuando el 1 de febrero de 2011 la Junta de Confiscaciones del Departamento de Justicia notificó a los recurridos la

---

[1] Atendida la petición de *certiorari*, presentada por el Estado, el 30 de noviembre de 2012 expedimos el caso CC-2012-0620 y ordenamos su consolidación con el CC-2012-0756.
[2] Véase, Demanda, Apéndice de la petición de *certiorari* CC-2012-0756, pág. 79.
[3] Íd.; Véase, Contestación a la Demanda, pág. 85.

confiscación de seis máquinas de juegos electrónicos ubicadas en el negocio Dólar (La Reina) de Juana Díaz, las cuales habían sido ocupadas el 19 de enero de 2011. Esa agencia entendió que Doble Seis infringió los Artículos 1 y 5 de la Ley 22-1997 y de las Secciones 2040, 6094 B-1 y 6140 de la Ley 120-1994 por no poseer las licencias correspondientes a dichas máquinas.

Ante este hecho, el 3 de marzo de 2011, Doble Seis y el Sr. Milton Hernández Isern (como Presidente y accionista principal de la empresa) presentaron una demanda sobre impugnación de confiscación. En la misma alegaron que la confiscación fue ilegal, por lo que exigieron la devolución de las máquinas confiscadas o el pago de su equivalente en dinero.[4] Además, incluyeron una causa de acción por daños y perjuicios en la que solicitaron $60,000 para Doble Seis por la alegada pérdida de ingresos, y $75,000 para el codemandante, señor Hernández Isern, por las angustias mentales sufridas.[5]

Así las cosas, el Estado presentó una Moción de Desestimación Parcial de la Demanda en la que sostuvo que procedía la desestimación de la acción en daños y perjuicios. Arguyó que le cobijaba la inmunidad soberana bajo las disposiciones de la Ley de Pleitos contra el Estado, _infra_, ya que las imputaciones de alegada

---

[4] Así también, plantearon que cada máquina fue tasada en $300, cantidad que impugnaron tras alegar que su valor era de $4,000 cada una, sin contar los "boards" electrónicos que valoraron en $1,000 cada uno.

[5] Asimismo, solicitaron la devolución de la cantidad de $154 en efectivo que le fueron incautados durante la intervención. Véase, Demanda, pág. 80.

negligencia versaban sobre actos realizados por los funcionarios en cumplimiento de una ley o la imposición de cobro de contribuciones. Alegó que por ello, el Tribunal de Primera Instancia (TPI) carecía de jurisdicción sobre la materia. De otra parte, argumentó que la Ley Uniforme de Confiscaciones, infra, no provee para una acción en daños y perjuicios, pues los remedios disponibles para situaciones de esta naturaleza se encuentran delimitados en la propia ley.

Ante ello, el 27 de julio de 2011 los recurridos se opusieron a la solicitud de desestimación parcial de la demanda alegando que la acción en daños no se fundamentaba en el hecho de que el Estado exigió las contribuciones correspondientes, sino al amparo del Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5142. En cuanto a esto esbozaron lo siguiente:

> cabe destacar que conforme a las alegaciones de la demanda la acción de daños y perjuicios no está predicada en la imposición y cobro de contribuciones, sino, **en la ocupación ilegal de la propiedad de la parte demandante.** (Énfasis en el original).[6]

Su contención principal era que las máquinas fueron ocupadas ilegalmente, ya que los funcionarios no tenían una orden judicial que los autorizara a ello, y que no existía motivo fundado para creer que estaban siendo utilizadas de forma contraria a la ley. Añadieron que si

---

[6] Véase, Oposición a solicitud de desestimación parcial, Apéndice del recurso de *certiorari* CC-2012-0620, pág. 114.

bien la Ley Uniforme de Confiscaciones, _infra_, no concedía una acción en daños, tampoco privaba de la misma.

Examinadas ambas mociones, el foro de primera instancia desestimó la acción en daños y perjuicios mediante sentencia parcial emitida el 6 de septiembre de 2011. En esencia, resolvió que la reclamación de daños y perjuicios no estaba autorizada en virtud de la inmunidad soberana, esto de conformidad al Art. 6(a) de la Ley de Pleitos Contra el Estado, _infra_.[7]

Inconforme con tal determinación, Doble Seis presentó un recurso de apelación ante el Tribunal de Apelaciones. En este, apuntó que su reclamación por los daños y perjuicios estaba amparada en la conducta presuntamente negligente de los funcionarios del Estado en el desempeño de sus funciones.[8] Luego de los trámites de rigor, el foro apelativo intermedio emitió una sentencia en la que razonó que, conforme a lo dispuesto en la Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. V, el TPI tenía la obligación de dar por ciertas todas las alegaciones fácticas de la demanda e interpretarlas de la manera más favorable a los recurridos. Por ello, entendió que el foro

---

[7] Asimismo, resolvió que siendo la operación de máquinas de juegos para adultos una actividad altamente regulada por el Departamento de Hacienda, el registro administrativo de un negocio estrechamente regulado como el de autos, no requería de una orden judicial previa. Añadió que el Secretario de Hacienda tenía la facultad inherente y el deber ministerial de fiscalizar a los operadores de máquinas de entretenimiento de adultos, con el fin de asegurar que estos lleven a cabo sus operaciones de conformidad con las leyes y reglamentos. El foro judicial reiteró que esa facultad no se limitaba a verificar que las máquinas tuvieran los marbetes y licencias requeridas, sino también a corroborar que su operación cumpliera con los parámetros dispuestos por ley.

[8] Véase, Recurso de Apelación, Apéndice del recurso de _certiorari_ CC-2012-0620, pág. 51.

primario debió colegir que las máquinas no se utilizaron de manera ilegal, y que las actuaciones culposas o negligentes de los empleados del Estado en el desempeño de sus funciones les causaron daños y angustias mentales a estos.

**B. CC-2012-0756:**

Al igual que los hechos descritos anteriormente, en este caso también se le notificó a Doble Seis la confiscación de cinco máquinas de su propiedad ocupadas el 20 de enero de 2011 en el negocio Dólar y Algo Extra, en el Municipio de Bayamón. Eventualmente, el 3 de marzo de 2011, Doble Seis y el señor Hernández Isern presentaron una demanda sobre impugnación de confiscación y daños y perjuicios contra el Departamento de Hacienda del Gobierno de Puerto Rico. En síntesis, expusieron similares argumentos a los contenidos en la demanda de impugnación de confiscación que se presentó en el recurso CC-2012-0620. En este caso solicitaron $50,000 en daños para Doble Seis por la alegada pérdida de ingresos y $75,000 para el codemandante, señor Hernández Isern, por las angustias mentales sufridas. Eventualmente, el Estado presentó una moción de desestimación parcial de la demanda en la que esgrimió los mismos fundamentos de derecho que expuso en la moción de desestimación que presentó en el caso CC-2012-0620.[9]

---

[9] En su contestación a la demanda, el Estado planteó que el Departamento de Hacienda le expidió a la parte demandante unas licencias para la operación de máquinas de juegos electrónicos pero

Atendida la moción, el foro de instancia desestimó la acción en daños y perjuicios bajo el fundamento de que al Estado le cobijaba la inmunidad soberana. Articuló que Doble Seis le estaba reclamando al Estado por actos que ejercieron sus funcionarios en el cumplimiento de una ley. Además, razonó que dentro del mecanismo procesal de impugnación de confiscación, los únicos remedios disponibles para el demandante, de decretarse la ilegalidad de la confiscación, es la devolución de la propiedad ocupada o el importe de la tasación si se dispuso de la misma.

En desacuerdo con ese dictamen, el 12 de marzo de 2012 Doble Seis recurrió ante el Tribunal de Apelaciones. Luego de varios incidentes procesales, el 19 de julio de 2012 ese foro emitió una sentencia concluyendo que en esa etapa procesal existía controversia en torno a si los funcionarios del Estado actuaron de acuerdo a sus facultades y obligaciones, o si por el contrario, intervinieron con culpa o negligencia al incautar las máquinas. Sin prejuzgar los méritos de la controversia, concluyó que los apelantes podrían tener una causa de acción contra el Estado al amparo del Artículo 1802 del Código Civil de Puerto Rico, supra. Esto, al analizar las

---

que, al realizar la inspección administrativa, los agentes encontraron que las máquinas que estaban operando eran de entretenimiento para adultos, las cuales a su vez funcionaban como máquinas de juegos de azar. Además, arguyeron que las mismas estaban desprovistas de licencia y marbete.

alegaciones de la demanda conforme a la Regla 10.2 de Procedimiento Civil, <u>supra</u>.

Inconforme con estos dictámenes, el 22 de agosto de 2012 el Estado recurrió ante nos.[10] En ambos casos el Estado plantea los mismos señalamientos de error. Estos son:

> **[e]rró el Tribunal de Apelaciones al no desestimar la acción en daños y perjuicios a pesar de la aplicabilidad de la inmunidad soberana del Estado.**
>
> **[e]rró el Tribunal de Apelaciones al no desestimar la acción en daños y perjuicios apoyada en el acto de confiscación, aun cuando la Ley de Confiscaciones provee remedios exclusivos que no contemplan la compensación en daños.**

A la luz de este marco fáctico, pasemos a exponer el estado de derecho aplicable a la controversia que nos ocupa.

## II

La interrogante que debemos dilucidar en este caso se circunscribe a determinar si, dentro de un procedimiento de impugnación de confiscación, el dueño de un bien que presuntamente se confiscó ilegalmente puede presentar una causa de acción por daños y perjuicios contra el Estado. Ahora bien, para propósitos de enmarcar la controversia dentro de la normativa que regula lo concerniente a la incautación de máquinas de entretenimiento, procedemos a

---

[10] Mediante Resolución de esta Curia de 30 de julio de 2013, se le concedió a la parte recurrida, Doble Seis Sport TV, Inc., un término de 10 días para presentar su alegato en este caso. Cabe mencionar que no recibimos su alegato, por lo que el caso quedó sometido sin el beneficio de su comparecencia.

discutir varios preceptos de Derecho. Primeramente, examinaremos el alcance de los registros permitidos en los negocios estrechamente regulados. Luego, expondremos las disposiciones pertinentes de la Ley de Juegos de Azar, _infra_, para finalmente, interpretar la Ley de Confiscaciones de 2011, _infra_, acorde a la controversia que se nos presenta.

## A. Registros en los negocios estrechamente regulados

Es conocido que la Sección 10 del Artículo II de la Constitución de Puerto Rico, Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo I, dispone que:

> [s]olo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.

En nuestro ordenamiento jurídico, esta protección constitucional se considera un valor comunitario de indiscutible jerarquía y, según hemos hilvanado jurisprudencialmente, el mismo consagra varios propósitos fundamentales. _Acarón v. D.R.N.A._, 186 D.P.R. 564, 573 (2012); _Pueblo v. Valenzuela Morel_, 158 D.P.R. 526, 539 (2003). Uno de esos propósitos es disuadir y desalentar a los funcionarios del orden público de incurrir en conducta que viole esta disposición, para así preservar la integridad judicial y evitar la complicidad de los tribunales con respecto a actos que infrinjan la

Constitución. Íd. El criterio fundamental al evaluar si una actuación gubernamental ha transgredido las limitaciones impuestas por nuestra Constitución es la razonabilidad, la cual se determina mediante un balance de los intereses presentes a la luz de la totalidad de las circunstancias involucradas en la actuación gubernamental impugnada. Pueblo v. Díaz Bonano, 176 D.P.R. 601, 613 (2009). Como regla general, todo registro, allanamiento o incautación que se realice, sea de índole penal o administrativa, es irrazonable *per se* de llevarse a cabo sin orden judicial previa. E.L.A. v. Coca Cola Bottling Company of Puerto Rico, 115 D.P.R. 197, 207 (1984). En estos casos, le corresponde al Estado demostrar su validez. Blassini et als. v. Departamento de Recursos Naturales, 176 D.P.R. 454, 462 (2009); Pueblo v. Serrano Reyes, 176 D.P.R. 437 (2009).

Ahora bien, la Sec. 6.1 de la Ley Núm. 170 de 12 de agosto de 1988, conocida como "Ley de Procedimiento Administrativo Uniforme" (LPAU), 3 L.P.R.A. sec. 2191, autoriza a las agencias a realizar registros administrativos siempre que se obtenga una orden judicial previa, excepto en tres ocasiones en las cuales no es necesario obtenerla: (1) en casos de emergencia; (2) en casos donde se **efectúa un registro al amparo de la facultad para conceder licencias o permisos**; y (3) en casos en los cuales se pueda obtener la información a simple vista y desde un lugar público. El registro que se

realiza en este contexto está sujeto a las limitaciones que se encuentran dentro del marco de lo estatuido por la LPAU y la Constitución, en la medida en que está condicionado a ciertos criterios. Acarón v. D.R.N.A., supra. Así, en Pueblo v. Ferreira Morales, 147 D.P.R. 238, 253 (1998), expresamos que la razonabilidad del registro administrativo de una actividad estrechamente reglamentada, debe cumplir con los siguientes requerimientos:

> (1) debe existir un interés estatal sustancial que fundamente el esquema regulador;
> (2) el esquema regulador promueve el interés del Estado; y
> (3) el esquema regulador de la agencia debe constituir un sustituto constitucional adecuado a la orden judicial en cuanto a certeza y regularidad de la intervención.

En cuanto a este tipo de procedimiento la Sec. 6.4 de la referida legislación dispone que:

> [l]as agencias podrán realizar inspecciones e investigaciones conjuntas con el objeto de ampliar y facilitar su capacidad de fiscalizar el cumplimiento de las leyes especiales por el cual deban velar. 3 L.P.R.A. sec. 2194.

En ese contexto, existen empresas y negocios que se encuentran ampliamente regulados por el Estado. Para que una empresa se considere como una de estas:

> 1) debe existir un interés gubernamental sustancial que fundamente el esquema regulador bajo el cual la inspección en cuestión se realiza;
> 2) la realización de la inspección sin orden debe ser necesaria para adelantar el interés gubernamental; y,
> 3) el programa de inspección que contenga el estatuto debe constituir un sustituto constitucionalmente adecuado a la orden

judicial en cuanto a certeza y regularidad. Pueblo v. Ferreira Morales, supra, pág. 253.

Como vemos, la ejecución de los registros de negocios estrechamente reglamentados se aparta de la norma general respecto a la exigencia de causa probable y de una orden judicial previa. Pueblo v. Ferreira Morales, supra; Pueblo v. Cedeño Laclaustra, 157 D.P.R. 743, 774-5. Esto es así debido a que

> [e]n tales circunstancias, resultaría oneroso y, por consiguiente, irrazonable obligar al Estado a que obtenga una orden judicial basada en causa probable para que pueda efectuar de forma válida un registro administrativo. Pueblo v. Ferreira Morales, supra, pág. 255.

Recientemente el Tribunal Federal para el Distrito de Puerto Rico atendió una controversia en Rivera Corraliza v. Puig Morales, 2013 WL 3755607 (2013). En ese caso se confiscaron unas máquinas de juegos y correspondió determinar si la confiscación violó la Primera, Cuarta, Octava y Vigesimocuarta enmienda de la Constitución de Estados Unidos. Al atender el asunto, esa Curia reconoció que existe un interés apremiante por parte del Estado para justificar un régimen regulatorio sobre la industria de las máquinas de juegos. Por esto, determinó que el registro satisfizo los requisitos para poder proceder sin una orden judicial. En ese contexto el Tribunal Federal expresó:

> Announcing searches ahead of time would thwart the Commonwealth's enforcement of its laws, because machines can be altered or removed before an announced inspection, thus concealing illegal actions. Unannounced inspections avoid this problem. Additionally, the defendants have

a reduced expectation of privacy in their gambling machines because of the pervasive regulation of gambling. The defendants have chosen to run a business that the Commonwealth monitors closely. Their machines are public commodities-requiring licensure to operate and are placed and located in an open place of business, not private homes. Defendants cannot expect privacy in their public accommodations, which they openly offer to the public and agree to maintain according to stringent Commonwealth guidelines. Rivera Corraliza v. Puig Morales, supra.

Así también, el foro federal justificó la incautación inmediata de las máquinas. Respecto a esa determinación expresó:

Allowing the machines to remain in service would expose citizens to the risk of unfair operation, which the law seeks to avoid. **Protecting against this immediate harm justifies seizing the machines immediately, while allowing the owner of the machines to appeal the seizure and prove the machines' legality, if possible.** Calero Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 678-9 (1974).

**B. Ley de Juegos de Azar**

La Sección 3 de la Ley Núm. 11 de 22 de agosto de 1933, según enmendada[11], 15 L.P.R.A. sec. 82, et seq., conocida como "Ley de Juegos de Azar", define y reglamenta las máquinas de juego de azar en nuestra jurisdicción. La misma provee lo siguiente:

La introducción, manufactura, posesión, uso o funcionamiento de máquinas vendedoras que sean utilizadas para fines de máquinas de juegos de azar o lotería y de las conocidas con el nombre de traganíqueles y de cualquier otra clase que sean utilizadas con fines de juego de azar o lotería, en cualquier forma en que fueren manipuladas, o cualquier sustituto de las mismas, **será considerada ilegal y su introducción, manufactura, uso, posesión o**

---

[11] Esta sección fue enmendada por el Artículo 1 de la Ley 22-1997.

**funcionamiento queda prohibido.** Serán máquinas de juegos de azar, aquellas que contengan alguno de los siguientes mecanismos o dispositivos:

(1) Un dispositivo para aceptar apuestas que son registradas en un contador dentro de la máquina.

(2) Un mecanismo para otorgar premios de dinero en efectivo al jugador, un dispensador de monedas que otorga el premio directamente al jugador, o metro de salida que pueda registrar o acreditar pagos en efectivo al jugador.

(3) Un dispositivo de bloqueo ("knock-off switch") para borrar los créditos una vez le son pagados al jugador ganador.

(4) Un dispositivo o mecanismo que haga a la máquina funcionar con total autonomía del jugador por un ciclo o espacio de tiempo predeterminado y que provoca que el resultado del juego o de la operación que la maquina realiza sea decidido por la suerte o el azar.

Todas las máquinas que no contengan estos mecanismos o dispositivos serán consideradas legales y se clasificarán como "máquinas de entretenimiento de adultos".

Por otra parte, la Sección 3A de la Ley de Juegos de Azar, 15 L.P.R.A. sec. 82a, define las máquinas de entretenimiento para adultos como las que:

[n]o contienen mecanismos o dispositivos característicos de las máquinas de juegos de azar según establecidos por el Tribunal Supremo de Puerto Rico y la sec. 82 de este título.

En cuanto a este tipo de máquinas, la Sección 4 de la mencionada Ley, 15 L.P.R.A. sec. 83, dispone que el Secretario de Hacienda:

[t]endrá la obligación de hacer cumplir y velar por el cumplimiento de todas las disposiciones de las leyes vigentes, en torno a las máquinas de entretenimiento para adultos. De igual manera, establecerá por reglamento las consideraciones necesarias para fiscalizar adecuadamente su manejo y tributación, así como el lugar donde estas podrán ser ubicadas.

> Establecerá el procedimiento necesario para que toda máquina a ser autorizada como máquina de entretenimiento para adultos, sea evaluada personalmente y certificada como máquina de entretenimiento para adultos por los agentes del Negociado de Bebidas y Licencias del Departamento de Hacienda. Determinará así mismo los requisitos y condiciones para la denegación, suspensión o revocación de una licencia.

Sin embargo, la Sección 2 de la Ley Núm. 221 de 15 de mayo de 1948, según enmendada, 15 L.P.R.A. sec. 71, creó una excepción a esta prohibición. A esos efectos, autorizó y legalizó la adquisición, el arrendamiento, la transportación, la introducción, la posesión, el uso, el mantenimiento y el funcionamiento de las máquinas conocidas como tragamonedas, única y exclusivamente cuando las mismas son introducidas por la Compañía de Turismo de Puerto Rico o por un concesionario autorizado. Las mismas deben ser ubicadas y operadas en las salas de juego autorizadas bajo la franquicia expedida por el Comisionado de Instituciones Financieras.

Nuestra jurisprudencia ha esbozado los criterios que caracterizan el juego de azar ilegal. A estos efectos, se toma en consideración: (1) el pago o prestación que se hace o se promete para participar en el juego de azar; (2) el azar o suerte por medio del cual se gana el premio, y (3) por último, el premio que constituye algo de valor pecuniario que la persona recibe directamente u obtiene el derecho a recibir. Boys and Girls Club v. Srio. De Hacienda, 179 D.P.R. 746, 759 (2010). Véase también, Sun Design Video v. E.L.A., 136 D.P.R. 763, 768 (1994).

En el ejercicio de la facultad que le confiere la Ley de Juegos de Azar, <u>supra</u>, el Secretario de Hacienda promulgó el Reglamento Núm. 7437 de 14 de diciembre de 2007 para suplementar ciertas disposiciones del Código de Rentas Internas de 1994[12]. Este tiene el fin de establecer los requisitos y procedimientos a seguir para la otorgación de las licencias requeridas para la operación de máquinas de entretenimiento. En específico, el Artículo 2041-1 del referido Reglamento reza:

> **Derechos de licencia a negocios donde operen máquinas de pasatiempo.**- Con sujeción a las exclusiones dispuestas en el Artículo 2040-1(b), toda persona que opere un negocio, establecimiento o local donde operen 4 o más máquinas o artefactos de pasatiempo manipulados con monedas o fichas, o mesas de billar, pagará un impuesto anual por concepto de derechos de licencia por cada negocio, establecimiento o local, por la cantidad de $200.

Por su parte, el inciso (a) de la Sección 3050.02 de la Ley Núm. 1-2011, conocida como "Código de Rentas Internas", 13 L.P.R.A. sec. 31712, aplicable al momento en que se incautaron las máquinas de este caso[13], establece el pago de un impuesto anual en concepto de derechos de licencias para máquinas operadas con monedas, cuyo pago

---

[12] El título completo de este Reglamento es: "Reglamento para implantar las disposiciones del Subtítulo B- Arbitrios de la Ley Núm. 120 de 31 de octubre de 1994, según enmendada, conocida como "Código de Rentas Internas de Puerto Rico de 1994", promulgado al amparo de la Sección 6130 del Código y de las Secciones 4 y 5 de la Ley Núm. 11 de 22 de agosto de 1933, según enmendada, conocida como "Ley de Juegos de Azar", que facultan al Secretario de Hacienda a adoptar los Reglamentos necesarios para poner en vigor las disposiciones de dicho Código y de dicha Ley; y para derogar el Reglamento Núm. 7215 de 1 de septiembre de 2006".

[13] La Ley Núm. 1-2011, conocida como el "Código de Rentas Internas" está vigente desde el 31 de enero de 2011. Empero, la vigencia de la Sec. 3050.02 es retroactiva al 1 de enero de 2011. En el presente caso, las máquinas fueron incautadas el 19 de enero de 2011 y el 20 de enero de 2011, respectivamente.

dependerá de la máquina de que se trate. La mencionada sección dispone el pago de impuestos por las siguientes cantidades:

(1) Por cada vellonera, por cada mesa de billar, por cada máquina o artefacto de pasatiempo manipulado con monedas o fichas de tipo mecánico, electrónico, o de video para niños y jóvenes cuando las habilidades o destrezas del jugador afectan significativamente el resultado final de la partida - $100

(2) Por cada máquina de video y juego electrónico manipulado con monedas o ficha que contengan material de violencia o de índole sexual cuando las habilidades o destrezas del jugador afectan significativamente el resultado final de la partida- $400

(3) Por cada máquina de entretenimiento para adultos según definidas en las secs. 82 et seq. del Título 15, conocidas como la "Ley de Juegos de Azar"- $2,250

Cabe destacar que el Artículo 2040 del Reglamento Núm. 7437, supra, provee que no será necesario exhibir la licencia en cada máquina, pero la misma estará disponible para su inspección por agentes del Departamento de Hacienda en el negocio donde radiquen. Además, cada máquina llevará adherido al lado derecho superior un marbete como medio de identificación, el cual bajo ninguna circunstancia será removido de la máquina al cual se asignó.

Por otro lado, la Sección 5A de la Ley de Juegos de Azar, 15 L.P.R.A. 84a, establece cuáles serán las multas y penalidades por violaciones a esta ley. En ese contexto establece que:

(a) Multa administrativa- El Secretario podrá imponer multa administrativa al dueño en una cantidad no menor de cinco mil dólares ($5,000) ni mayor de diez mil dólares

($10,000) por cada violación a las secs. 82 a 84a de este título.

(b)  Penalidades-

(1)  Todo dueño de máquinas de entretenimiento para adultos o cualquier otra persona, operador o asistente a un negocio o establecimiento que introduzca en dicho negocio o use o trate de usar en el mismo, los artefactos de juegos descritos en la sec. 82 de este título consideradas como máquinas de juegos de azar, será culpable de un delito menos grave y si fuere convicto será castigado con multa no menor de doscientos dólares ($200) ni mayor de cuatrocientos dólares ($400) o con pena de reclusión por un período de tiempo no menor de treinta (30) días ni mayor de sesenta (60) días o ambas penas a discreción del tribunal. Si se tratare de una segunda convicción se le impondrá una pena de multa no menor de trescientos dólares ($300) ni mayor de quinientos dólares ($500) y una pena de reclusión por un período de tiempo no menor de sesenta (60) días ni mayor de noventa (90) días. Cualquier convicción subsiguiente se le impondrá una pena de multa fija de quinientos dólares ($500) y reclusión por un periodo de tiempo de seis (6) meses.

(2)  Toda persona que infringiere alguna de las disposiciones de las secs. 82 a 84a de este título o de los reglamentos promulgados por el Secretario será, si fuere convicta, sentenciada con una pena de multa fija de quinientos dólares ($500) o una pena de reclusión por un período de tiempo no menor de dos (2) meses ni mayor de seis (6) meses o ambas penas a discreción del tribunal.

(3)  …

Y añade que:

independientemente de las penalidades prescritas en las secs. 82 a 84a de este título, el Secretario **confiscará** y dispondrá de cualquier máquina de entretenimiento de adultos que opere sin licencias, o con una

licencia expirada o con una licencia emitida para otra máquina. (Énfasis nuestro).

Así también, la Sec. 6140 del Código de Rentas Internas de Puerto Rico de 1994, 13 L.P.R.A. sec. 8140 vigente al momento de ocurrir la confiscación de las máquinas que se ocuparon en este caso- dispone que el Secretario de Hacienda está facultado para examinar bienes, locales o cualquier otro material relacionado a las actividades sujetas a los impuestos y derechos, así como a confiscar o destruir cualquier máquina ilegal bajo la Ley de Juegos de Azar, <u>supra</u>. Específicamente, el inciso (G) de esta sección establece que el Secretario de Hacienda puede confiscar y vender en pública subasta o destruir:

> [c]ualquier máquina o artefacto de pasatiempo manipulado con monedas o fichas, en los casos de reincidencia en la demora del pago de los derechos de licencia. Además podrá **confiscar** y destruir cualquier máquina o artefacto de pasatiempo operado con monedas o fichas cuya operación sea ilegal de conformidad con lo dispuesto en las secs. 71 et seq. del Título 15, conocidas como "Ley de Juegos de Azar".(Énfasis nuestro).

**C. Ley de Confiscaciones**

Según definimos en <u>Rodríguez Ramos v. E.L.A.</u>, 174 D.P.R. 194, 202 (2008), la confiscación es: "[e]l acto de ocupación que lleva a cabo el Estado de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en relación con la comisión de ciertos delitos". Véase además, <u>Centeno Rodríguez v. E.L.A.</u>, 170 D.P.R. 907 (2007). En <u>Mapfre Praico v. E.L.A</u>., 2013

T.S.P.R. 56, pág. 7, 188 D.P.R. ___ (2013), señalamos que la confiscación es un procedimiento estatutario que actúa como una sanción penal adicional contra los criminales. Véase también, Cooperativa de Seguros Múltiples v. E.L.A., 180 D.P.R. 655, 664 (2011).

Como sabemos, existe una modalidad confiscatoria denominada *in rem,* que es una acción civil que se dirige contra la cosa misma y no contra el dueño de la propiedad, poseedor, encargado, o cualquier otra persona con interés legal sobre el bien. Mapfre Praico v. E.L.A., supra, pág. 8; Banco Bilbao Vizcaya v. E.L.A., 180 D.P.R. 681, 686 (2011). Los elementos necesarios para determinar si procede una confiscación civil son la existencia: (1) de prueba suficiente y preponderante de que se ha cometido un delito, y (2) de un nexo entre la comisión del delito y la propiedad confiscada. Rodríguez Ramos v. E.L.A., supra, pág. 203; Suárez v. E.L.A., 162 D.P.R. 43, 52 (2004). Este tipo de confiscación *in rem* puede efectuarse antes de que se presente una acusación contra la persona o que se haga una declaración de culpabilidad o absolución. Íd., págs. 54-5. Sin embargo, para sostenerla, le corresponde al Estado demostrar que la propiedad confiscada fue utilizada en el curso de una actividad delictiva. Íd.

En cuanto a estos procedimientos cabe dirigirnos a la Ley Núm. 119-2011, 34 L.P.R.A. sec. 1723 et seq., que derogó la Ley Núm. 93 de 13 de julio de 1988, según enmendada, conocida como "Ley Uniforme de Confiscaciones

de 1988", a fin de establecer la Ley Uniforme de Confiscaciones de 2011. El Art. 30 de esta ley indica que la misma comenzó a regir inmediatamente después de su aprobación y su aplicación es retroactiva. 34 L.P.R.A. 1724nt.

En el Art. 9 de la precitada legislación se menciona la propiedad que estará sujeta a ser confiscada a favor del Gobierno de Puerto Rico. Esta es:

> toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, **en las leyes de juegos prohibidos**, bebidas alcohólicas, **leyes fiscales**, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones; así como en otras leyes y en aquellos estatutos confiscatorios en los que por ley se autorice la confiscación. (Énfasis nuestro.) 34 L.P.R.A. sec. 1724f.

De acuerdo con el Art. 10 de la Ley Uniforme de Confiscaciones, 34 L.P.R.A. sec. 1724g, la ocupación de la propiedad sujeta a confiscación se llevará a cabo por la agencia o el funcionario a cargo de la implantación de la ley, policías o agentes del orden público, mediante orden de un magistrado o tribunal competente o **sin previa orden del tribunal**, en los siguientes casos:

> (a) Cuando la ocupación se efectúa mientras se lleva a cabo un arresto;
> (b) cuando la ocupación se efectúa en virtud de una sentencia judicial, o
> **(c) cuando la propiedad a ocuparse haya sido utilizada, resulte o sea el producto de la**

**comisión de cualquiera de los delitos, leyes o estatutos confiscatorios que se expresan en la sec. 1724f de este título [Art. 9 de la Ley Uniforme de Confiscaciones].** (Énfasis nuestro.)

Así también, el Art. 15 de la Ley de Confiscaciones, 34 L.P.R.A. Sec. 1724l, dispone el procedimiento que debe seguir toda persona que desee impugnar la validez de una confiscación. A esos efectos, se deberá impugnar la confiscación dentro de los treinta (30) días siguientes a la fecha en que se reciba la notificación, mediante la radicación de una demanda contra el Estado Libre Asociado de Puerto Rico y contra el funcionario que autorizó la ocupación, debiéndose emplazar al Secretario de Justicia dentro de los quince (15) días siguientes a la fecha en que se presentó la demanda. La demanda que al amparo de esta Ley se autoriza, está sujeta estrictamente a los siguientes términos:

> el Tribunal ante el cual se haya radicado el pleito deberá adjudicarlo dentro de seis (6) meses contados desde que se presentó la contestación a la demanda, a menos que este término sea renunciado o ampliado con el consentimiento estricto de todas las partes y por causa justificada, por un término que no excederá de treinta (30) días adicionales; se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos. El demandante tiene el peso de la prueba para derrotar la legalidad de la confiscación. El descubrimiento de prueba se llevará a cabo dentro de los primeros treinta (30) días contados a partir de la contestación a la demanda y no se extenderá a las declaraciones juradas que obren en el expediente del fiscal hasta que se tenga derecho a las mismas en alguna acción penal que exista relacionada a los hechos de la confiscación.

Es menester señalar que el Art. 19 de la referida Ley, 34 L.P.R.A. sec. 1724p, establece los remedios disponibles en caso de que se decrete que una confiscación realizada por el Estado fue ilegal. En específico, dicho precepto señala que:

> [e]n aquellos casos en los que el tribunal decrete la ilegalidad de una confiscación, la Junta **devolverá la propiedad ocupada al demandante.** Cuando haya dispuesto de la misma, el Gobierno de Puerto Rico **le pagará el importe de la tasación al momento de la ocupación o la cantidad de dinero por la cual se haya vendido, la que resulte mayor, más el interés legal prevaleciente**, de conformidad con las Reglas de Procedimiento Civil, según enmendadas, tomando como base el valor de tasación, a partir de la fecha de la ocupación. (Énfasis nuestro).

Tras examinar el marco jurídico que precede, pasemos al análisis y discusión de la controversia que tenemos ante nuestra consideración.

### III

Primeramente debemos remitirnos al Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14, que dispone que: "[c]uando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Los principios de hermenéutica de nuestro ordenamiento sirven de base cuando los tribunales están llamados a interpretar las leyes. Brau v. E.L.A., 2014 T.S.P.R 26, pág. 11, 190 D.P.R ___ (2014). En ese ejercicio, de primera intención se debe determinar si el lenguaje de la ley es simple y preciso en relación a la controversia. S.L.G. Solá-Moreno v. Bengoa Becerra, 182 D.P.R. 675, 691 (2011). Pues sabemos, que no

hay necesidad de recurrir al subterfugio de indagar más allá de la ley para cumplir con su propósito legislativo cuando su texto es claro. San Gerónimo Caribe Project v. Registradora, 2013 T.S.P.R. 138, pág. 9, 189 D.P.R. ____ (2013); Asociación FCIAS v. Caribe Specialty II, 179 D.P.R. 923, 938 (2010).

Cabe señalar, además, que la función de la Rama Judicial no es legislar, sino interpretar las leyes que aprueba la Rama Legislativa y constatar que estas no estén reñidas con la Constitución. Marbury v. Madison, 5 U.S. 137 (1803); San Gerónimo Caribe Project v. Registradora, supra, pág. 9. Pues le corresponde a la Asamblea Legislativa y los legisladores electos que allí sirven determinar cuál debe ser la política pública de nuestras leyes. Ex Parte A.A.R., 2013 T.S.P.R. 16, pág. 61, 187 D.P.R. ___ (2013) citando a Delgado, Ex Parte, 165 D.P.R. 170, 192 (2005).

En los presentes casos consolidados el Estado señala que el foro intermedio debió desestimar la causa de acción por daños y perjuicios incoada por la parte demandante, Doble Seis, porque le cobijaba la inmunidad soberana. Asimismo, señaló que la Ley Uniforme de Confiscaciones, supra, no provee ese tipo de acción. Pasemos a evaluar ambos señalamientos.

Como sabemos, el Art. 1802 del Código Civil de Puerto Rico, supra, dispone que: "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está

obligado a reparar el daño causado". Conforme a esta disposición, se le impone responsabilidad a una persona por daños y perjuicios cuando el demandante demuestra, mediante preponderancia de la prueba: (1) que ha habido una acción u omisión de parte; (2) que ha mediado negligencia; y (3) que existe un nexo causal entre la acción u omisión de la parte y el daño sufrido. García Gómez v. E.L.A. et al., 163 D.P.R. 800, 809 (2005). En este caso, los peticionarios incoaron una acción en daños y perjuicios por los alegados daños que sufrieron como consecuencia de la ocupación realizada por el Estado. En este punto el Estado presentó como defensa que no respondía por los daños alegados por Doble Seis debido a que le cobijaba le inmunidad soberana.

La doctrina de inmunidad del soberano que prevalece en nuestro ordenamiento jurídico sostiene que se requiere el consentimiento del Estado para que puedan instarse procedimientos judiciales en su contra. Guardiola Álvarez v. Departamento de la Familia, 175 D.P.R. 668, 678 (2009); Berríos v. E.L.A., 171 D.P.R. 549, 555 (2007). Defendini Collazo et al. v. E.L.A., 134 D.P.R. 28, 40 (1993). Hace varias décadas se aprobó la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como la "Ley de Pleitos contra el Estado", 32 L.P.R.A. sec. 3077 et seq. Mediante dicho estatuto, el Estado consintió a ser demandado en daños y perjuicios por las actuaciones y omisiones culposas o negligentes de sus funcionarios, empleados o

agentes, mientras estén ejerciendo sus funciones. Berríos Román v. E.L.A., 171 D.P.R. 549, 556 (2007). La misma expone una renuncia parcial del Estado a su inmunidad soberana, al autorizar la presentación de demandas en su contra en las circunstancias esbozadas en la referida ley. E.L.A. v. Martínez Zayas, 188 D.P.R. 749, 760 (2013). En ese sentido, los estatutos de esta naturaleza son de interpretación restrictiva en favor del Estado. Rosario Cartagena v. E.L.A., 101 D.P.R. 620, 631 (1973). Hemos reconocido que esta ley beneficia tanto al ciudadano perjudicado como al funcionario ya que su intención es que el Estado responda por los actos y las omisiones de los funcionarios y agentes especiales "en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular" siempre y cuando se cumpla con las condiciones impuestas por ese estatuto. Zambrana Maldonado v. E.L.A., 129 D.P.R. 740, 754 (1992).

No obstante, como explicaremos más adelante, en estos recursos no nos corresponde resolver si ciertos funcionarios actuaron negligentemente en el cumplimiento de sus funciones al momento de efectuar la ocupación de las máquinas de Doble Seis. Por el contrario, la controversia que atendemos es determinar si es procedente que quien impugne la confiscación de su propiedad alegando que su ocupación fue ilegal, también presente en ese procedimiento una reclamación sobre daños y perjuicios. Evaluemos este particular.

La intervención e incautación hecha por el Estado en este caso está inexorablemente ligada a la obligación que le imponen las leyes y los reglamentos al Secretario de Hacienda de inspeccionar y fiscalizar los lugares que poseen todo tipo de máquinas de pasatiempo. Como ya discutimos, al Secretario de Hacienda se le han conferido amplias facultades para fiscalizar el cumplimiento de los requisitos y procedimientos establecidos para el negocio y la industria de los juegos de azar. En ese sentido, el legislador le ha delegado el poder de reglamentar, investigar y asegurar que las máquinas de entretenimiento para adultos operen conforme a la ley.

De esta forma, el Secretario de Hacienda tiene la facultad inherente y el deber ministerial de asegurar que los negocios donde operan máquinas de entretenimiento para adultos lleven a cabo los procedimientos adecuados y cumplan rigurosamente con los requisitos exigidos por ley. Hemos reiterado que la industria de las máquinas de juegos para adultos es una actividad alta y estrechamente regulada. Véase, Rivera Corraliza v. Puig Morales, supra. Así también, recordemos que la Ley Uniforme de Confiscaciones, supra, autoriza al Estado a confiscar toda propiedad que sea utilizada en relación a la comisión de delitos tipificados en las leyes de juegos prohibidos o en las leyes fiscales, es decir, propiedades tales como las que se ocuparon en este caso si operan en contravención a

la ley. Claro está, dicha confiscación queda sujeta a que se verifique su legalidad en caso de que sea impugnada.

Como ya mencionamos, en caso de que el Estado haya procedido a ocupar y confiscar una propiedad, el dueño de la misma tiene a su disposición una acción de impugnación de confiscación. En específico, del Art. 15 de la Ley Uniforme de Confiscaciones se desprende que si se determinara que la confiscación fue ilegal y que no fue hecha conforme al procedimiento y a los requisitos necesarios, el remedio provisto por ese estatuto para la parte afectada es la devolución de la propiedad ocupada o el importe de la tasación al momento de la ocupación o la cantidad de dinero por la cual se haya vendido. **Ante ese claro lenguaje, es forzoso concluir que no hay cabida para la procedencia de una causa de acción en daños y perjuicios en el contexto fáctico que nos ocupa.** De esta forma lo hemos resuelto anteriormente. Así por ejemplo, hemos expresado en varias ocasiones que no proceden los intereses ni partidas por pérdidas o deterioro que surjan a causa de las confiscaciones. Veamos.

En el contexto antes mencionado, e interpretando el Art. 13 de la anterior Ley Uniforme de Confiscaciones de 1988, similar al Art. 19 de la Ley Uniforme de Confiscaciones actual, resolvimos Rivera v. E.L.A., 140 D.P.R. 538 (1996). En ese caso se nos presentó una controversia donde tuvimos que resolver si procedía el pago de intereses sobre el importe de tasación en aquellos

casos en que el Estado devuelve la propiedad confiscada. Resolvimos esa interrogante en la negativa. Puntualizamos que la entonces vigente Ley de Confiscaciones proveía dos alternativas, a saber: (1) devolver la propiedad, o (2) en caso de que se haya dispuesto de la misma, pagar una suma de dinero. Asimismo, concluimos que correspondía a la Rama Legislativa, y no a esta Curia, enmendar esa legislación para extender el pago de intereses a aquellos casos en que se devuelve la propiedad confiscada.

Nótese que en el caso precitado, distinto a lo que interpretó el Tribunal de Apelaciones en una de las sentencias apeladas, no admitimos la procedencia de ninguna otra compensación en un procedimiento de impugnación de confiscación.[14] En su dictamen, el foro apelativo expresó que en Rivera v. E.L.A., supra, "reconoci[mos] el derecho de una persona cuya propiedad fue confiscada ilegalmente a instar un reclamo de daños y perjuicios bajo la Ley Núm. 104 (Ley de Pleitos contra el Estado)".[15] Todo lo contrario. Los demandantes de ese caso solicitaron el pago de intereses bajo el fundamento de que mediante ello el legislador quiso proveer un mecanismo para resarcir al ciudadano. Rivera v. E.L.A., supra, pág. 543. Tras analizar el historial legislativo de la medida que dio origen al Art. 13 de la Ley Uniforme de Confiscaciones de 1988, acotamos que la intención

---

[14] Sentencia de 19 de julio de 2012.
[15] Véase, Sentencia del Tribunal de Apelaciones, Apéndice del recurso CC-2012-756, pág. 24.

legislativa fue conceder el pago de intereses únicamente cuando se resarcía al perjudicado mediante una suma en efectivo por no poderse devolver la propiedad. No dispusimos de una controversia como la que nos presenta este caso.

De igual forma, en Rodríguez v. E.L.A., 114 D.P.R. 446 (1983), el Superintendente de la Policía confiscó un vehículo de motor en cumplimiento de las disposiciones de la entonces vigente Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones.[16] El recurrente fue absuelto de la infracción a la Ley de la Bolita por la cual se le acusaba. Por esto, impugnó la confiscación y solicitó que se le compensara por la pérdida de uso del vehículo y por el deterioro causado al mismo por el transcurso del tiempo. Allí resolvimos que el estatuto no confería derecho alguno al dueño para que el Estado le compensara por tal pérdida o deterioro.

Además de lo discutido previamente, es de notar que el reconocimiento de una acción de daños y perjuicios dentro de un procedimiento de impugnación de confiscación desvirtuaría el proceso sumario que el legislador diseñó. Es decir, dentro de **ese** proceso sumerio no se puede litigar una acción de daños y perjuicios. El legislador tuvo dos propósitos al establecer la nueva ley. Primero, se propuso dar fin a los procedimientos dilatorios y evitar que los tribunales continúen congestionados por las

---

[16] Ley Núm. 39 del 4 de junio de 1960, 34 L.P.R.A. secs. 1721 y 1722.

demandas de impugnaciones de confiscaciones. P. del S. 897, eventual Ley Núm. 119, supra, 1ra Sesión Ordinaria, 16ta Asamblea Legislativa, Exposición de Motivos, pág. 2. Segundo, el legislador quiso evitar que "el transcurso del tiempo deteriore las propiedades confiscadas en perjuicio de sus dueños". Íd.

Para cumplir con estos propósitos, el legislador diseñó un procedimiento sumario con unos términos muy específicos. Así por ejemplo, el Estado tiene un término jurisdiccional de 30 días desde la ocupación de la propiedad para notificar la confiscación. Art. 13 de la Ley Núm. 119-2011, supra, 34 L.P.R.A. sec. 1724j. A su vez, la persona notificada tiene 30 días desde la notificación para presentar el pleito de impugnación. Art. 15 de la Ley Núm. 119-2011, supra, 34 L.P.R.A. sec. 1724l. El demandante tiene que emplazar al Secretario de Justicia dentro del término jurisdiccional de 15 días contados a partir de la fecha en que se presentó la demanda. Íd. Después de emplazado, el Secretario tiene 30 días para contestar. Íd. Luego de la contestación, las partes tienen solo 30 días para el descubrimiento de prueba. Id. El Tribunal tiene que adjudicar el pleito de impugnación dentro del término de seis meses desde que se presentó la contestación a la demanda.[17] En fin, el Tribunal está obligado a "tramitar estas demandas de manera expedita".

---

[17] Este término solo puede extenderse por un término no mayor de treinta días si todas las partes consienten y existe alguna causa justificada. Art. 15 de la Ley Núm. 119-2011, supra, 34 L.P.R.A. sec. 1724l.

Art. 15 de la Ley Núm. 119-2011, supra, 43 L.P.R.A. sec. 1724l.

Como se puede apreciar, a la luz del marco jurídico discutido, es evidente que la Asamblea Legislativa ponderó de manera precisa los remedios disponibles en el procedimiento de una impugnación de confiscación instada al amparo de la Ley Uniforme de Confiscaciones, supra, ante la eventualidad de que una confiscación se decrete ilegal. No hay duda alguna de **que el texto de la ley no provee para una acción en daños y perjuicios como remedio a una confiscación ilegal fundamentada en que no procedía la ocupación de la propiedad.** Como parte del análisis del historial legislativo, hemos examinado rigurosamente las ponencias presentadas durante el trámite legislativo del P. del S. 897, que posteriormente se convirtiera en la actual Ley Uniforme de Confiscaciones, supra. De hecho, al analizar las ponencias presentadas por los Departamentos de Justicia, Hacienda, Familia y la Policía de Puerto Rico, no se desprende indicio alguno de proveer como remedio una acción en daños y perjuicios. Asimismo, al estudiar el debate legislativo tampoco encontramos expresión alguna que apunte a la concesión de permitir una acción de ese tipo.

Si permitiéramos la litigación de una acción de daños dentro del proceso de impugnación, no le daríamos efectividad a esa intención legislativa que venimos obligados a respetar. Los pleitos de daños de ordinario

generalmente requieren un descubrimiento de prueba amplio y liberal que consume mucho tiempo. Véase por ejemplo, Berríos Falcón v. Torres Merced, 175 D.P.R. 962 (2009). Este prolongado descubrimiento de prueba forzaría a las partes y al tribunal a incumplir con los términos estrictos establecidos en la Ley Uniforme de Confiscaciones de 2011, supra. Si las partes no cumplen con los términos establecidos, los tribunales continuarían congestionados con los procesos de impugnación de confiscación y, además, el transcurso del tiempo provocaría el deterioro de las propiedades confiscadas. En fin, la discusión de una acción de daños dentro del proceso sumario de impugnación de confiscación, tornaría ineficaz la naturaleza sumaria del proceso.

La contención de la parte recurrida, Doble Seis, es que procede la acción en daños y perjuicios dentro de este procedimiento porque a pesar de que la Ley Uniforme de Confiscaciones, supra, no provee para una acción de esta naturaleza, tampoco la prohíbe. Este argumento nos invita a ampliar el alcance de la intención legislativa. Una vez más, reiteramos que esa no es la función que nuestro sistema de separación de poderes le ha delegado a este Tribunal. En todo caso, le corresponde al legislador dentro del ámbito de sus funciones constitucionales considerar una propuesta dirigida a incorporar al texto de la Ley esta causa de acción dentro de este tipo de procedimiento.

**IV**

Por los fundamentos que anteceden, revocamos la sentencia del Tribunal de Apelaciones. En consecuencia, resolvemos que es improcedente dentro de la acción de impugnación de confiscación una reclamación en daños y perjuicios contra el Gobierno de Puerto Rico por los alegados daños sufridos a raíz de la ocupación de las máquinas de juegos propiedad de la parte recurrida.

Se dictará Sentencia de conformidad.


                                        Edgardo Rivera García
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Doble Seis Sport TV, Inc. y Milton Hernández Isern Recurridos<br><br>v.<br><br>Departamento de Hacienda, Estado Libre Asociado de Puerto Rico Peticionario<br><br>Doble Seis Sport TV, Inc. y Milton Hernández Isern Recurridos<br><br>v.<br><br>Departamento de Hacienda, Estado Libre Asociado de Puerto Rico Peticionario | CC-2012-0620 cons. con CC-2012-0756 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 4 de abril de 2014.

Por los fundamentos expuestos en la Opinión que antecede, revocamos las sentencias recurridas. Resolvemos que es improcedente litigar dentro del proceso de impugnación de confiscación una reclamación sobre daños y perjuicios contra el Estado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton concurre sin opinión. El Juez Asociado señor Estrella Martínez disiente con la siguiente expresión:

"Nuestro ordenamiento procesal cuenta con las herramientas adecuadas para acumular o bifurcar oportunamente las acciones ordinarias de daños y perjuicios de los procesos sumarios, según requiera la sana administración de la justicia.

Por eso, la ponencia mayoritaria está errada al restringir, por vía jurisprudencial, el momento en que una persona pueda presentar una demanda al amparo del Artículo 1802 del Código Civil. La base para el raciocinio mayoritario estriba en la intención legislativa de que los procesos de impugnación se resuelvan rápidamente para beneficio de la ciudadanía y evitar el ataponamiento de casos de demandas instadas al amparo de esa ley especial. Sin embargo, obvian que el legislador en nada alteró las normas procesales dirigidas a restringir cómo y cuándo puede ejercitarse la acción ordinaria de daños y perjuicios. Y es que esa aspiración de política pública invocada por la mayoría no está reñida con permitirle al ciudadano, alegadamente afectado por acciones del Estado, que pueda presentar conjuntamente todas sus causas de acción. Todo lo contrario, al permitirlo se satisfacen otros de los pilares que expresamente incluye la ley especial de confiscaciones y que la mayoría pasa por alto, a saber: proteger la propiedad de los ciudadanos, propiciar que el Estado tenga la totalidad de las imputaciones en su contra a fin de fomentar minimizar los desembolsos de fondos públicos y promover una solución justa y económica al ciudadano. Respetuosamente, considero que la fragmentación impuesta por vía jurisprudencial no adelanta ese mandato legislativo. Por lo anteriormente expuesto, disiento".


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo